UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

SHANNON J. WHITESIDE                                                                          PLAINTIFF

V.                                      No. 3:22-CV-184-BRW-JTR

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                                                DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Wilson can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

### I. Introduction

On April 2, 2019, Plaintiff Shannon J. Whiteside ("Whiteside") filed an application for Title II disability insurance benefits. (Tr. at 28). On the same day, he filed a Title XVI application for supplemental security income. *Id.* In both applications, he alleged disability beginning on April 18, 2018. *Id.* In a written

decision dated July 7, 2021, an administrative law judge ("ALJ") denied the applications. (Tr. at 28–42). The Appeals Council denied Whiteside's request for review on June 3, 2022. (Tr. at 1–7). The ALJ's decision now stands as the final decision of the Commissioner, and Whiteside has requested judicial review.

For the reasons stated below, the Court concludes that the Commissioner's decision should be affirmed.

## II. The Commissioner's Decision

The ALJ found that Whiteside had not engaged in substantial gainful activity since the alleged onset date of April 18, 2018.[1] (Tr. at 31). At Step Two, the ALJ determined that Whiteside has the following severe impairments: degenerative disc disease of the cervical spine and lumbar spine, fracture of the lower extremity, and adjustment disorder. *Id*.

At Step Three, the ALJ determined that Whiteside's impairments did not meet or equal a listed impairment.[2] (Tr. at 32–33). Before proceeding to Step Four, the ALJ determined that Whiteside had the residual functional capacity ("RFC") to

---

[1] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

[2] 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

perform work at the light exertional level, with some additional limitations: (1) he could stand and walk for no more than 4 hours in an 8-hour workday; (2) he would need to alternate sitting and standing every 30 minutes but could remain on task; (3) he could not climb ladders, ropes, or scaffolds; (4) he could no more than frequently stoop and no more than occasionally perform other postural movements; (5) he could not use foot controls with the left lower extremity; (6) he could not work in an environment with concentrated industrial vibration, unprotected heights, or hazards; and (7) he could be limited to performing simple routine tasks and making simple work-related decisions. (Tr. at 34).

At Step Four, the ALJ determined that Whiteside is unable to perform any of her past relevant work. (Tr. at 40). Relying upon testimony from a Vocational Expert ("VE"), the ALJ found, based on Whiteside's age, education, work experience and RFC, there are jobs in the national economy that Whiteside can perform, including positions such as bench assembler, inspector, hand packager, and office helper. (Tr. at 41). Therefore, the ALJ concluded that Whiteside was not disabled. *Id*.

### III. Discussion

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see*

*also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

B.  **Whiteside's Arguments on Appeal**

Whiteside contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. He argues that the RFC did not fully incorporate Whiteside's limitations, and more specifically, that the RFC did not include all of the restrictions assigned by one of his treating physicians. Next, he argues that the

4

ALJ did not properly evaluate Whiteside's subjective complaints.

Whiteside suffered a left lower leg injury in April 2018 that required surgery. (Tr. at 494–503). Whiteside was given a knee brace and a slate of pain medications. (Tr. at 488–489). A few months after the knee surgery, he reported that he no longer needed narcotics to control pain. (Tr. at 579–580). In July 2018, Whiteside stated that he was pleased with his progress.[3] (Tr. at 674–675).

After almost a year, Whiteside again saw a provider for left leg pain and cramping. (Tr. at 642–645). He reported that he had stopped taking his medication regularly, because he did not like taking a daily pill. *Id*. At that time, Whiteside was assessed with lower leg pain and muscle spasm, along with anxiety. He declined therapy for anxiety.[4] *Id*. Whiteside said that Tylenol and Flexeril helped with leg pain.[5] (Tr. at 637). Whiteside declined a referral for physical therapy, and he also declined an orthopedic consult.[6] (Tr. at 37, 687, 814–823).

Due to back pain, lumbar and cervical MRIs were ordered. They revealed no

---

[3] Improvement in condition supports an ALJ's finding that a claimant is not disabled. See *Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

[4] Whiteside's attorney submitted evidence that Whiteside attended two therapy sessions after the ALJ issued her decision, and the Appeals Council explained that this evidence was not considered, as it was from after the relevant time-period. (Tr. at 2, 11).

[5] Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

[6] A failure to follow a recommended course of treatment weighs against a claimant's credibility. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005).

more than mild-to-moderate conditions, which were accounted for by the ALJ's Step Two determination. (Tr. at 31, 683, 801). Clinical exams showed generally normal range of motion, full strength and normal tone in all extremities, and a normal gait. (Tr. at 668–669, 732–734, 741–743, 789–791, 808–821). By March 2021, Whiteside (who was obese at the time of application for benefits) reported that he had lost 50 pounds, was feeling better, and was doing some light weightbearing exercise. (Tr. at 809).

While Whiteside complained of ill effects from anxiety, as stated above, he declined therapy, and he did not pursue any formal psychiatric treatment. (Tr. at 37). Mental statues examinations were typically normal, and Whiteside admitted that although Prozac was prescribed by his PCP, he stopped taking it. (Tr. at 37, 487–495).

Dr. John Thomas Fisher, II, M.D., performed a consultative examination on July 20, 2019. (Tr. at 610–615). He found grossly normal range of motion in Whiteside's back and extremities, although Whiteside walked with a limp. *Id*. Whiteside had positive straight-leg raise on the right. *Id*. He could walk and stand without an assistive device and squat and arise from a squatting position. *Id*. He could not walk on his heels and toes. *Id*.

Dr. Fisher wrote in his report that Whiteside would have moderate-to-severe limitations in walking distances greater than 200 yards, and moderate-to-severe

limitations with carrying and lifting. (Tr. at 615). The ALJ considered this opinion, and found that the opinion was persuasive based on objective evidence of degenerative disc disease. (Tr. at 38). Whiteside argues that the ALJ should have precisely cited to Dr. Fisher's assigned functional limitations in the RFC. But an ALJ is not bound to rely on any particular medical opinion, and he can decline to incorporate any portions of an opinion that he deems inconsistent.[7] The ALJ pointed out that Dr. Fisher's prescribed limitations were vague, to some extent. (Tr. at 38). Throughout her opinion, the ALJ also noted Whiteside's noncompliance and failure to follow recommendations for physical therapy and an orthopedic consult. (Tr. at 34–39). Moreover, Whiteside could perform daily activities like shopping in stores, spending time with others, and preparing his own meals.[8] (Tr. at 33, 388–394).

The ALJ prescribed an RFC for work at the light exertional level with quite a few additional physical restrictions.[9] (Tr. at 34). In formulating the RFC, the ALJ

---

[7] See *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000*); Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011); *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

[8] Such daily activities undermine Whiteside's claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

[9] A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

considered Dr. Fisher's opinion, and the opinion of the two DDS medical experts,[10] who opined that Whiteside could perform sedentary work. (Tr. at 100–123, 128–157). The ALJ explained that the DDS opinions were too restrictive, failing to align with only mild-to-moderate objective findings and generally beginning clinical examinations. (Tr. at 38–39). The ALJ fully explained how he evaluated the opinion evidence and other medical evidence, and there is substantial support for the RFC finding.

Whiteside also contends that the ALJ did not properly evaluate his subjective complaints.[11] In fact, the ALJ discussed the objective and clinical findings, the opinion evidence, the extent and nature of Whiteside's pain, and his treatment regimen. (Tr. at 34–37). She noted noncompliance and the ability to perform daily activities. *Id*. Whiteside demonstrated pain control and increased exercise capacity over the relevant time-period. Given these factors, the ALJ properly concluded that Whiteside's subjective complaints were inconsistent with the record as a whole. *Id*.

---

[10] Social Security Disability applications are initially processed through a network of local Social Security Administration field offices and State agencies (called Disability Determination Services or DDSs).

[11] When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. See *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id*. (internal citations omitted).

She gave good reasons for this finding.

Finally, Whiteside makes a glancing argument that the ALJ did not give proper weight to lay opinion evidence. Whiteside's attorney submitted three statements from Whiteside's friends, which statements explained that Whiteside stayed home and never wanted to do anything. (Tr. at 466–469). First, an ALJ is not required to articulate in his decision how he considered nonmedical evidence.[12] And secondly, the ALJ did note that he received these statements. (Tr. at 33). Finally, these statements did not contain any concrete functional limitations. The ALJ properly considered the evidence in the record as a whole.

### III. Conclusion

There is substantial evidence to support the Commissioner's decision that Whiteside was not disabled. The RFC incorporated all of Whiteside's functional limitations, and the ALJ properly considered Whiteside's subjective complaints.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be AFFIRMED and that judgment be entered for the Defendant.

DATED this 28th day of June, 2023.

_____
UNITED STATES MAGISTRATE JUDGE

---

[12] See 20 C.F.R. §§ 404.1520c(d), 416.920c(d); SSR 16-3p.